## Case No. 16,098.

UNITED STATES v. PUSEY.

[6 N. B. R. 284.] [2]

Circuit Court, E. D. Michigan. March 5, 1872.

BANKRUPTCY—FRAUDULENT DISPOSITION OF GOODS —INDICTMENT.

That clause of section 44 of the United States bankrupt act of 1867 [14 Stat. 539]

[1] [Reported by Hon. William Cranch, Chief Judge.]

[2] [Reprinted by permission.]

which punishes by imprisonment any fraudulent disposition of the goods of a debtor obtained on credit and remaining unpaid for, within three months next before the commencement of proceedings in bankruptcy, is constitutional and valid. Motion in arrest of judgment on this ground denied, and defendant sentenced to one year's imprisonment.

[Cited in Re Reiman, Case No. 11,673; Re Jackson, Id. 7,124.

The defendant was tried and convicted on an information under that clause of section 44 of the bankrupt act of 1867 which provides "that from and after the passage of this act if any debtor or bankrupt * * * shall, with intent to defraud his creditors, within three months next before the commencement of proceedings in bankruptcy, pawn, pledge, or dispose of, otherwise than by bona fide transactions in the ordinary way of his trade, any of his goods and chattels which have been obtained on credit and remain unpaid for, he shall be deemed guilty of a misdemeanor, and, upon conviction thereof in any court in the United States, shall be punished by imprisonment, with or without hard labor, for a term not exceeding three years." The ground of the motion in arrest is that the above clause of section 44 is unconstitutional and void. There was another ground of motion stated, but it was not insisted on upon the argument. The argument in support of the motion is: first, that the clause in question assumes to punish an offense committed before commencement of proceedings in bankruptcy, and is therefore not a law necessary and proper for carrying into execution the power of congress to establish uniform laws on the subject of bankruptcy; and, second, that it is an ex post facto law.

Mr. Brown (Newberry, Pond & Brown), for the motion.

Mr. Swan, Asst. U. S. Atty., opposed.

LONGYEAR, District Judge. Among the powers of congress enumerated in the constitution (article 1, § 8), are, "to establish * * * uniform laws on the subject of bankruptcies throughout the United States," and, "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by the constitution in the government of the United States, or in any department or officer thereof." Under the first power named congress established the bankrupt law of 1867. If, therefore, the clause of section 44 in question, is a law "necessary and proper" for carrying the bankrupt law into effect, it comes within the latter power named, and is constitutional and valid; otherwise it is not, because then it is a mere police regulation relating exclusively to the internal trade of the states, and does not come within the power of congress. U. S. v. De Witt. 9 Wall. [76 U. S.] 41.

Under the first proposition of the argu-

ment in support of the motion, it is important to bear in mind the distinction between the subject matter, bankruptcy, in regard to which congress is empowered to legislate, and the means, machinery or practice congress has prescribed for carrying that power into effect. It is with the former, the subject matter, we have to deal here, and not with the latter, any further than it may come in question incidentally. What then is "the subject of bankruptcy?" What does it include? What realm do laws upon that subject occupy? And what are necessary and proper laws for carrying such laws into effect? The Federalist (No. 32) alludes to the constitutional power of congress to establish uniform laws of bankruptcy as a power intimately connected with the regulation of commerce, and for the prevention of frauds. 2 Story, Const. § 1105. It is intimately connected with the regulation of commerce because it has for its subject the relation of debtor and creditor—a relation growing out of commercial transactions, and often, and it may be said to a very large extent, between citizens of different states, and, in fact, between citizens of the United States and those of foreign countries. That it is a power for the prevention of frauds on creditors has always been assumed whenever it has been exercised, and I believe has never been questioned. (See the former acts of 1800 and 1841, as well as the present act of 1867.) To this end these laws are made to reach back of the commencement of proceedings to defeat frauds, and, in fact, to constitute acts frauds, which by the laws of the states, and but for the bankrupt law itself, were entirely valid. Story on the Constitution (section 1106) says: "It may be stated that the general object of all bankrupt and insolvent laws is, on the one hand, to secure to creditors an appropriation of the property of their debtors pro tanto to the discharge of their debts, whenever the latter are unable to discharge the whole amount; and on the other hand, to relieve the unfortunate and honest debtors from perpetual bondage to their creditors, either in the shape of unlimited imprisonment to coerce payment of their debts, or of an absolute right to appropriate and monopolise all their future earnings." A very compact and pointed description, or definition of a bankrupt law occurs in the debates on a bankrupt bill in the house of representatives in eighteen hundred and eighteen. It was there said: "Perhaps as satisfactory description of a bankrupt law as can be framed is, that it is a law for the benefit and relief of creditors and their debtors, in cases in which the latter are unable or unwilling to pay their debts. And a law on the subject of bankruptcies in the sense of the constitution, is a law making provision for cases of persons failing to pay their debts." 4 Elliot, Deb. 282. The "subject of bankruptcy," in a general sense, concerns the relation of debtor and creditor, and in a particular and no doubt stricter sense, concerns such relation in cases where the debtor is unwilling or unable to pay his debts. Laws upon that subject have for their object the appropriation, either voluntarily or by compulsion, of the debtor's property to the payment of his debts, pro tanto, or in full, as the case may be, and the relief of honest debtors. To accomplish this object these laws are made to operate upon, affect and control the relations of the parties, so as to limit and circumscribe the rights of the debtor in, and his control over, his property, and the rights of others dealing with him, in regard thereto, in many particulars, before any proceedings in bankruptcy shall have been commenced by or against such debtor. Of this nature are the provisions of sections thirty-five and thirty-nine, invalidating preferences under certain circumstances when made within four months, and certain payments, sales, transfers, etc., when made within six months before commencement of proceedings; and all assignments, gifts, sales, conveyances or transfers, with intent to delay, defraud or hinder creditors, made at any time after the passage of the act. There are other provisions of the same nature, but the above are sufficient for illustration. The power of congress to enact the provisions giving the act the operation and effect just mentioned (and I am not aware that their right to exercise that power has ever been questioned), is derived solely from their general powers under article 1, § 8, of the constitution, to make all laws necessary and proper for carrying into effect their power to establish laws on the subject of bankruptcy. It is to this same general provision of the constitution that we must look for the power of congress to make the law in question. It must be found there or it does not exist at all.

One object to be attained by the enactment of a bankrupt law, as we have seen, is the appropriation of the debtor's property to the payment of his debts. And this may be said to be the principal or primary object of all such laws. The relief of the debtor, although an important consideration, is really but incidental to the other. Story, Const. § 1106. Is the provision in question a law "necessary and proper," within the meaning of those words as used in the constitution, for carrying into effect the bankrupt law, and the object and purpose of its enactment? The meaning of the words "necessary and proper" has been judicially determined by the supreme court on full discussion and deliberation to be "needful," "requisite," "essential," "conducive to." McCulloch v. Maryland, 4 Wheat. [17 U. S.] 418. See, also, Story, Const. §§ 1248–1255, citing the above and other authorities, where the subject is very fully considered and the same construction maintained. In McCulloch v.

Maryland [supra], Chief Justice Marshall, in delivering the opinion of the court, says: "We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction of the constitution must allow to the national legislature that discretion, with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional." Here, as we have seen, the end sought is the appropriation of the debtor's property to the payment of his debts. The clause in question is for the prevention of frauds by debtors on their creditors, by which that end may be defeated or impaired. It certainly does not need argument to show that the provision is a means clearly conducive, and plainly adapted, to the end sought.

But it is claimed in argument, first—that the provision in question purports to punish an offense committed before commencement of proceedings in bankruptcy, and that, therefore, it can have no connection with the bankrupt act; and, second—that such offense (as is charged in the information in this case) is one committed by a debtor merely, one who may or may not become a bankrupt, and that, therefore, it has no connection with the act; and that for both reasons the offense concerns the internal trade of the states alone, and is not within the power of congress to be created or punished.

I think the ground occupied by the first objection is much too narrow. The proceedings in bankruptcy do not constitute the end to be accomplished by a bankrupt act. They constitute the machinery, so to speak, by which that end is to be obtained, viz.: the appropriation of the debtor's property to the payment of his debts. Therefore the prevention of the fraud denounced by the provision, being, as we have seen, conducive to that end, it can make no difference whether it relates to a fraud committed before or after the machinery provided for the accomplishment of the end is set in motion.

The second ground is more difficult of solution. The person who may commit the offense is described in the act as "any debtor or bankrupt," and in the case under consideration the defendant is described in the information as a debtor merely. In the English bankrupt acts, from which the provision in question was no doubt taken, the word "bankrupt" only is used, the word "debtor" having been added in our act. In order to be a bankrupt a person must first be a debtor. But a bankrupt, in the sense of the English act, as well as of our own, is a debtor, and something more. He is a debtor who has committed an act of bankruptcy, declared to be such by the bankrupt law. Rex v. Jones, 4 Barn. & Adol. 345; 24 E. C. L. 156; Reg. v. Lands, 33 Eng. Law & Eq. 536; Buckingham v. McLean, 13 How. [54 U. S.] 167; In re Black [Case No. 1,457]; In re Craft [Id. 3,317]. A "debtor" may or may not be a bankrupt. But, from the fact that both words, "debtor" and "bankrupt," are used, and in the disjunctive, it must be held that the former is used in the provision in question, as descriptive of a person who is a debtor, but who has not, at the time of committing the offense, become a bankrupt. And it is on this account, principally, that the difficulty arises. This difficulty, however, is only apparent, as we shall presently see. It grows less when we consider what, as we have already seen, is included by the expression "subject of bankruptcies," as used in the constitution—that in a general sense it concerns the relation of debtor and creditor, a relation existing largely between citizens of different states, and so, nearly related to, in fact constituting a branch of those great commercial relations over which the power of congress is also extended. True, the expression has a limited signification, that is, that it concerns the relation of debtor and creditor in cases where the debtor is unable or unwilling to pay his debts, yet it none the less concerns the relation of debtor and creditor, the limitation being in the instance only, and not in degree. And when we also consider that the leading object of a bankrupt law is the appropriation of the debtor's property to the payment of his debts, and to that end the prevention of frauds, reaching back of the commencement of proceedings, as the present law does (sections 35 and 39), and as the previous laws of 1800 and 1841 did, and invalidating and annulling contracts and transactions on that ground (some of which, but for the bankrupt law, were valid when made), within certain specified periods of time, and, in some instances, at any time after the passage of the act; and this, so far as I know or can ascertain, without question, or even a doubt suggested as to the constitutional power of congress so to enact. And the difficulty grows still less, in fact vanishes, when the foregoing considerations are taken in connection with the fact that the ascertainment whether the act described constitutes a crime is made to depend upon the debtor's committing some act of bankruptcy, on account of which he shall be declared a bankrupt, within so short a time after doing the act specified as to afford a reasonable presumption that he contemplated bankruptcy (or committing an act of bankruptcy, which is the same thing, as we have seen), when he did the act specified. The time specified in the provision is "within three months next before the commencement of proceedings in bankruptcy." Commencement of proceedings in bankruptcy is the fil-

ing of a petition for adjudication of bankruptcy by or against a debtor, upon which such debtor shall be adjudicated a bankrupt. Section 38; In re Patterson [Case No. 10,-815]. If the petition is filed by the debtor, then that is the act of bankruptcy whereby he acquires the legal status of bankrupt. Section 11. If the petition is filed against the debtor, then the act or acts by which he acquired that status, and on account of which he is adjudged a bankrupt, must have been committed before the filing of the petition. So that in either case the debtor must have committed an act of bankruptcy within three months after the act specified in order to bring the case within the law.

Suppose congress had, in lieu of the present form of expression, provided that in order to constitute the specified act as an offense, it should be committed by a debtor contemplating, or in contemplation of bankruptcy; then I apprehend there could be no question of the constitutionality of the provision. But is not that the force and effect of the provision as it now stands? If congress had enacted as above supposed, it would have been left to courts and juries to determine what would constitute proof of contemplation of bankruptcy. Like all other questions of the intent or animus of the acts and conduct of persons, it would very rarely admit of direct proof, but in most cases would necessarily depend upon circumstantial evidence. There are provisions of the act by which the fraudulent character of transactions is expressly made to depend upon their having been had "in contemplation of bankruptcy." In such cases it has always been held that the fact that the transaction was had by a debtor at a comparatively recent period of time before becoming bankrupt, is presumptive evidence of the transaction having been had in contemplation of bankruptcy—stronger or weaker, as the time was more or less remote. But this leaves the matter to depend largely upon the uncertain and varying opinions of different judges and juries, and perhaps the fluctuating opinions of the same judges—an element which ought not to exist in penal enactments. Congress has, therefore, seen fit in the enactment in question, to withhold this question from courts and juries, and by express enactment to establish a rule as to the time, which shall be at once uniform and conclusive.

It was said in argument, that from the reading of the provision in question, it is not the doing of the act specified that constitutes the offense, but the commencement of proceedings in bankruptcy, by or against the offender. From the views already advanced the answer to this obejtion is obvious. If the debtor commits the act specified, and at any time within three months thereafter, commits an act, on account of which he is liable to be declared by the court to be a bankrupt, he is, as we have seen, conclusively presumed to have committed the act in contemplation of committing an act of bankruptcy, and the offense is complete, upon committing the former act, whether proceedings for adjudication of bankruptcy are commenced within three months or not, except in the single instance where the act of bankruptcy is the commencement of such proceedings by the debtor. But the offense cannot be prosecuted unless such proceedings are commenced within three months. In this respect it is a limitation merely.

It was also objected in argument that the limitation to three months is purely arbitrary, that it might just as well be three years, or thirty years. That would simply be an abuse of power, which we have no right to presume any congress would be guilty of. Story on the Constitution (section 1252), citing the Federalist, Nos. 33, 34, says: "There is always some chance of error, or abuse of every power; but this furnishes no ground of objection against the power. * * * The remedy for any abuse or misconstruction of the power, is the same as in similar abuses and misconstructions of the state governments. It is by an appeal to the other departments of the government; and finally to the people, in the exercise of their elective franchises." And finally, the same objection might be made to sections 35 and 39, and to all limitation laws, which no one would think of making at this day.

From what has been said and written by early commentators, and by high authority, in regard to the power of congress over bankruptcies as well as from the nature of the subject itself, there is some ground for assuming that it extends to the regulation of all the relations of debtor and creditor, for the prevention of frauds, and otherwise, to the end of placing all creditors of the same debtor, not expressly preferred, upon one broad basis of equality, and of securing the honest appropriation of a debtor's property, not expressly exempted, to the payment of his debts, either with or without the commission of an act of bankruptcy, or whether bankruptcy was or was not in contemplation. But in this case it is unnecessary to go to that extent, and I therefore leave the point undecided.

Upon all considerations, I hold that the first ground of argument against the unconstitutionality of the law is untenable.

The second ground of the objection is, that the provision in question is an ex post facto law, and therefore unconstitutional, in this, that it purports to punish an act as an offense which was not such at the time it was committed. As we have already seen, the act which this provision purports to punish is an offense, when it is an offense at all, the moment it is committed. It is made necessary, it is true, to resort to the subsequent acts of the perpetrator, to ascertain the criminal character of such former act; but when thus ascertained, it relates back to the committing of it. Such subsequent acts do not invest such former act with any element it did not pos-

sess when it was committed, but simply ascertain what its elements were from the beginning. An ex post facto law, however, is, in common acceptation, a law enacted after the fact. Here the law was in existence at the time the act complained of was committed. The objection, therefore, is not germane.

The second ground of objection is, therefore, also untenable.

While the powers of the general government are all derived from the constitution, the powers of each branch, the legislative, the executive and the judicial, are entirely separate and distinct from each other. And while the judicial branch, under its powers to expound the law, possesses the power to annul legislative acts on the ground of unconstitutionality, it will never exercise that power except in cases entirely free from all reasonable doubt. So that if I even entertained doubts in this case, which I do not, I should still be obliged to hold the law valid.

The law in question is one that strongly commends itself to favor. A proper and enlightened enforcement of it, must tend largely to strengthen credit and inspire confidence in commercial transactions—consummations highly worthy of the fostering care of the government, especially in a country like ours, where credit enters so largely in the business transactions between merchants and traders. The creditor, when he parts with his property, necessarily relies largely upon the honesty and good faith of his debtor—that the latter will do nothing intentionally which shall impair his ability to pay at maturity, or failing to do so, that shall interfere with the honest appropriation of his property to the payment of his debts. It is both a moral and a legal right of the creditor so to rely, and it is both a moral and a legal obligation and duty of the debtor to observe that right, and nothing in my opinion will conduce more to its observance than a rigid enforcement of the law in question. Let it come to be understood that it is a crime for a debtor wilfully and intentionally to violate the faith and betray the confidence placed in him, constituting as they do, in most cases, the very foundation of his credit, a crime for which severe and certain punishment will be inflicted, and I firmly believe that we shall have less of fraud, and fraudulent practices—that corrupt and debilitating disease with which the body commercial has always been afflicted.

This case was transmitted from the district to the circuit court, on account of the novelty and importance of the questions here involved, in the hope that a hearing of this motion might be had before a full bench. But on account of the extensive and laborious duties of the circuit judge on his too large circuit, the end sought was found to be impracticable without considerable delay. I have, therefore, by the consent and acquiescence of all parties concerned, heard the motion without his valuable aid. I have, however, availed myself of opportunities to consult with him, and

have laid the views expressed in the foregoing opinion before him, and I am authorised by him to say that he fully concurs in the result at which I have arrived.

The motion in arrest of judgment must be denied, and judgment must pass upon the verdict.

The defendant was sentenced to one year's imprisonment.